## M'Clelland *against* Myers.

An attorney at law, to secure the lien debt of his client, bid for the real estate of the defendant, and purchased it for a third person, for a price equal to the amount of his client's claim, for which he gave a receipt to the sheriff, and took the deed in his own name. Upon conveying to the person for whom he purchased, he took a judgment as security for the purchase money in his own and his client's name, and subsequently assigned the one half of it to a person without notice of the facts. This judgment having been collected by the sheriff, it was held that the equitable assignee was entitled to have the one half thus transferred to him in preference to the client who originally furnished the consideration.

ERROR to the common pleas of *Adams* county.

William M'Clelland against Adam Myers. Issue directed by the court to try the right to a sum of money in the hands of the sheriff, made upon the sale of the real estate of Johnston & Lyon.

Adam Myers obtained three judgments against Duncan & Mahon amounting to 1900 dollars, which were entered upon a warrant of attorney by John L. Fuller, Esq. The estate of Duncan & Mahon was afterwards sold upon a subsequent judgment, and purchased by John L. Fuller for Johnston & Lyon. Fuller took a deed in his own name, and receipted to the sheriff for the amount of Adam Myers's judgments: he afterwards conveyed the land to Johnston & Lyon, and took from them a judgment in the names of John L. Fuller and Adam Myers for the amount of the three judgments of Adam Myers against Duncan & Mahon, for which he had receipted to the sheriff. This judgment was entered on the 18th of September 1834, and on the 28th of November 1834 Fuller assigned on the record the one half of it to William M'Clelland, the plaintiff in this issue, who knew nothing of the circumstances stated. To January term 1836 a *scire facias post annum et diem* issued to revive the judgment, and then Adam Myers came in and claimed the whole amount of the judgment as his. The money was made by the sale of the property of Johnston & Lyon, and brought into court for appropriation. This issue was directed to try whether William M'Clelland was entitled to any part of the judgment; and upon the trial the facts stated were proved.

The plaintiff requested the court to charge the jury upon the following points:

1. If John L. Fuller purchased the property of Stephen Duncan at sheriff's sale, on Waner's judgment, and had the deed made to himself, and then conveyed the same to Johnston & Lyon, and took the judgment of Fuller & Myers *v.* Johnston & Lyon for the amount

[M'Clelland v. Myers.]

of such purchase, although he paid the sheriff *the* purchase money by receipting the judgments of Myers *v.* Duncan & Mahon, as attorney of Myers, to the full amount of the judgment in favour of Fuller & Myers *v.* Johnston and Lyon, and if Fuller transferred the one half of said judgment to William M'Clelland for a valuable consideration, without any notice to M'Clelland of what the consideration of said judgment was; then William M'Clelland is entitled to recover, especially if such purchase of the real estate was made without the authority of Myers, and not as his agent.

2. If John L. Fuller was employed as attorney at law by Mr Myers to collect his judgments against Duncan & Mahon, without any authority to purchase the real estate for said Myers, and said Fuller did collect and enter satisfaction on said judgments, and in payment thereof purchased the land in his own name, and conveyed the same to Johnston & Lyon, and took their judgment to himself and Myers jointly for the purchase money, and then sold and transferred the one half of said judgment to William M'Clelland for a valuable consideration, without notice of any claim by said Myers to said one half; then plaintiff is entitled to recover.

Whereupon the court instructed the jury:

1. If the purchase was made by Fuller, and the purchase money settled with the sheriff by his receipting as the attorney of Myers for the money due on Myers's three judgments against Duncan & Mahon, and Fuller took the judgment to Myers and himself for the amount of said judgments or of such purchase money, on his conveying to Johnston & Lyon, as supposed by plaintiff, it was competent for Adam Myers, to adopt and ratify the transaction, to consider Fuller as his agent, and the judgment (which was taken to secure the money due to him) for his use and as his security; and if William M'Clelland purchased or took assignment of one half of the judgment, he acquired thereby no right to the money, nor any part thereof.

Under the circumstances supposed, Fuller had no right to the money, and therefore could convey none to another. M'Clelland, though he purchased for a valuable consideration, without notice of what was the consideration of the judgment, is in no better situation than Fuller was. The judgment on the face of it implied an interest in Myers; and M'Clelland, thus admonished, should have called on him for information. Not doing so, he purchased at his peril.

2. This proposition, which has been substantially answered in the answer to the first, is not correct.

According to the facts supposed, the money secured by the judgment belonged in equity to Myers; and in the absence of his assent his right could not be destroyed or transferred to another. There is no artificial rule which determines the rights of parties. It does not follow, as the plaintiff's counsel seems to contend, when a security is taken to two jointly, one of whom assigned, that the assignee is of course entitled to *one half* of the money due. Equity, regarding

[M'Clelland v. Myers.]

substance rather than form, looks to the merits of the parties, and determines accordingly ; and if the judgment against Johnston & Lyon was taken solely for money due to Adam Myers; if, as testified by Mr Lyon, it was taken for the three judgments of Duncan & Mahon, and was to *represent* them, Myers furnished the consideration of the judgment, Fuller had no interest in it, and M'Clelland, who purchased of Fuller, had just as little.

*Smyser* and *Stephens,* for plaintiff in error, cited, 14 *Serg. & Rawle* 309 ; 3 *Mass. Rep.* 403 ; 4 *Wash.* 105, 106.

*Miller,* contra, cited, 5 *Watts* 68 ; 9 *Johns. Rep.* 253 ; 6 *Johns. Rep.* 256 ; 4 *Rawle* 285 ; 1 *Penns. Rep.* 266 ; 1 *Rawle* 227; 2 *Penns. Rep.* 245.

The opinion of the Court was delivered by

Gibson, C. J.—This is a case in which one of two innocent men must suffer a loss occasioned by neither ; and it is necessarily a hard one.　The title of the assignor to a moiety of the judgment was a legal one ; and it would require a clear equity to prevail against it. To affect himself, an equity would spring from his embezzlement of the money it was given to secure ; but might it be asserted against his innocent assignee ?　Were a judgment assignable at law, it certainly might not ; for a legal assignee holds discharged of secret trusts arising, as in this case, *ex maleficio.*　But the plaintiff is only an equitable assignee ; and standing as the purchaser of an imperfect title, on principles of equity applicable to purchasers in general, he would, as a *cestui que trust,* be posterior in time, and consequently posterior in equity.　But another principle, springing from the nature of the property at the origin of the transaction, is decisive in his favour.　In contemplation of law, the defendant's money was received from Mahon and Duncan, and subsequently invested in the judgment in question ; and thus it was deprived of its earmark.　It would not have been more so had it been counted down for them by Johnston & Lyon, and returned to the latter on receiving their *cognovit* for it.　The transaction was strictly a loan, which the defendant has affirmed by grasping at the fruit of it in the plaintiff's hands ; and it is entirely clear that money cannot be followed into hands that received it, or its produce, in good faith.　That principle was established by Clarke *v.* Shee, *Cowp.* 197 ; and it has become a familiar one.　The money of a principal, paid by an agent in discharge of his proper debt, cannot be recovered of an innocent receiver ; nor, *à fortiori,* can property procured with it be demanded of an innocent purchaser.　Here the defendant attempts to follow his money through an embezzlement, a loan, a judgment taken for it as a security, and an assignment of it, though the judgment had stood as the assignor's property unchallenged on the records of the court for two years, and with nothing on its face to warn the public

[M'Clelland v. Myers.]

of an adverse right to it. The assignee was bound on no principle of precaution to inquire of the other legal part owner whether he were not the equitable owner of the whole. There was nothing to breed a suspicion of it. If negligence is imputable to any one, it is to the defendant, who might have been led to the transaction by the return to his execution ; or if none were made, by inquiring of the sheriff into the cause of the delay. Disaffirming the unauthorised act of his attorney, he might perhaps have procured the sale to be set aside by proof of collusion ; but affirming it, he might have pursued the delinquent attorney personally, with the advantage of having him declared a trustee of any security taken for investment. The personal demerit of his fraud, which turns a wrong doer into a trustee, would in that case have prevented him from availing himself of the rule that he who affirms an act in part shall not disaffirm it in part. Here there is no demerit in the plaintiff on that or any other score ; and equity would follow the money into the hands of the attorney himself only for the personal demerit of his fraudulent conversion. The direction, therefore, was essentially wrong.

Judgment reversed and a *venire de novo* awarded.